O

JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| LUZ ELENA ESCALANTE; A.E., a minor, | Case No. 2:14-CV-7237-ODW(JPRx) |
| Plaintiffs, | **ORDER GRANTING MOTION TO REMAND [8]** |
| v. | |
| BURLINGTON NATIONAL INDEMNITY, LTD.; DOES 1–100, inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Luz Escalante and A.E. move to remand this action to Los Angeles County Superior Court for lack of subject-matter jurisdiction. (ECF No. 8.) Plaintiffs argue that Defendant Burlington National Indemnity, Ltd. failed to establish diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs' main argument is that Burlington's Removal was untimely. For the reasons discussed below, the Court finds that Burlington's Removal did not meet the standards set forth by 28 U.S.C. § 1446. Therefore, this Court **GRANTS** Plaintiff's Motion to Remand.[1] (ECF No. 8.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Plaintiffs' claims arise from a previous judgment.  Lawrence Hansen and Ruben Marmet are licensed physicians employed by Family Planning Associates Medical Group, Inc. ("FPAMGI").  (Compl. ¶ 8.)  On November 4, 2008, Plaintiffs filed suit against both doctors and FPAMGI for medical malpractice.  (*Id.* ¶ 10.)  On January 20, 2012, Plaintiffs obtained a judgment finding all three jointly and severally liable to Plaintiffs for $6,155,562.00.  (*Id.* ¶ 11.)  Hansen, Marmet, and FPAMGI were insured for malpractice by Defendant Burlington.  (Mot. 3.)  The insurance policy limited coverage to $1,000,000 per incident/claimant with a maximum of $3,000,000.  (*Id.*)  After the judgment, Burlington only paid Plaintiffs $1,000,000 of the over $6,000,000 owed to them.

Following the judgment, Irving Feldkamp IV, FPAMGI's principal and president, notified Plaintiffs that the insurance broker responsible for placing the malpractice policy with Burlington was Richard Beall and his company, Beall Financial and Insurance Services, Inc. (collectively "the Beall Defendants").  (*Id.* 4; Mot. Ex. 1, 2.)  FPAMGI agreed to assign to Plaintiffs all rights it had against Burlington for bad faith and against the Beall Defendants for negligently obtaining inadequate malpractice insurance in exchange for a covenant not to execute the judgment.  (*Id.*)

On January 16, 2013, Plaintiffs, now acting as judgment creditors, filed this action in state court, alleging (1) breach of insurance contract; (2) tortious breach of implied covenant of good faith and fair dealing; (3) an action under California Insurance Code §11580(b)(2); and (4) negligence.[2]  (Not. of Removal Ex. A.)  The original Complaint included as defendants, Burlington, a Cayman Island citizen; Beall and Beall Financial and Insurance Services, both California citizens; and Chandler Insurance Company, Ltd., a Cayman Island citizen.

---

[2] On May15, 2013, Plaintiffs amended the Complaint.  The only difference was a change in the minor plaintiff's guardian ad litem. (Mot. 5.)

Plaintiffs spent over a year trying to effectuate service on Burlington, an offshore company. (Mot. 6.) After multiple failed attempts and state-court supervision, Burlington was finally served on June 19, 2014. (*Id.*)

Meanwhile, on May 22, 2014, the Beall Defendants, moved for summary judgment arguing that they were not FPAMGI's malpractice insurance broker. (*Id.* 5.) Despite having represented to Plaintiffs that the Beall Defendants were responsible for FPAMGI's insurance policy, Irving Feldkamp IV disclosed during his deposition that neither Beall nor his company ever acted as insurance brokers for FPAMGI. (*Id.* 11.) Moreover, in the same deposition Feldkamp IV notified the Plaintiffs that Burlington was started and owned by his father, Irving Feldkamp III. (*Id.*)

On September 2, 2014, Plaintiffs dropped the Beall Defendants (the only non-diverse parties). (Not. of Removal ¶ 7.) On August 22, 2014 Plaintiffs dismissed Chandler Insurance Co. (*Id.* ¶ 8.)

On January 16, 2013, Plaintiffs commenced this action in Los Angeles County Superior Court. (Not. of Removal Ex. A.) Burlington removed the action to this Court on September 16, 2014, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (ECF 1.) On October 7, 2014, Plaintiffs moved to remand this action. (ECF No. 8.) Defendants timely opposed. (ECF No. 9.) That Motion is now before the Court for decision.

### III.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The

party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at 566).

Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332. A defendant may remove a case from a state court to a federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, on the basis of federal question or diversity jurisdiction.  To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship among the adverse parties, and the amount in controversy must exceed $75,000, usually exclusive of interest and costs.  28 U.S.C. § 1332(a).

## IV.   DISCUSSION

It is uncontested that the jurisdictional minimum for the amount in controversy is satisfied and that there is complete diversity between the remaining parties.  This case turns on whether removal was timely.  Burlington argues that although it had been over a year since the state-court action was filed, removal was proper because Plaintiffs acted in bad faith by fraudulently joining the Beall Defendants and waiting over a year after filing the action to serve Burlington.  (Opp'n 6.)

Under 28 U.S.C. §1446(b) a defendant can remove a case within 30 days of receiving a paper from which it can first be ascertained that the case has become removable.  However, if the case is based on diversity jurisdiction it cannot be removed "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  In California, as in the federal courts, a suit is "commenced" upon filing.  Cal. Civ. Proc. Code § 350 (West 2006) ("An action is commenced, within the meaning of this Title, when the complaint is filed."); *see* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

This narrow bad-faith exception to the one-year limitation is a recent amendment to § 1446 and the Ninth Circuit has yet to decide on what standards meet this bad-faith requirement. *NKD Diversified Enters., Inc. v. First Mercury Ins. Co.,* No. 1:14-CV-00183-AWI, 2014 WL 1671659, at *3-4 (E.D. Cal. Apr. 28, 2014). While the bad-faith standard in regard to § 1446 is unclear, the Ninth Circuit has previously held that the requirement of bad-faith, in the context of awarding sanctions, carries with it a high threshold and entails actions tantamount to recklessly raising a frivolous argument or disrupting and hindering court proceedings. *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997); *Hutto v. Finney,* 437 U.S. 678, 689 n. 14 (1978). Previous examples of bad faith include removal-defeating strategies such as fraudulently joining parties to destroy diversity or refraining to serve defendants until the passage of the one-year deadline. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1316–17 (9th Cir. 1998.); *Kite v. Richard Wolf Med. Instruments Corp.,* 761 F. Supp. 597, 600 (S.D. Ind. 1989).

**A. The Beall Defendants Were Not Fraudulently Joined**

Here, Burlington argues that by initially having the non-diverse Beall Defendants in the Complaint and later dropping them, Plaintiffs fraudulently joined them in bad faith. (Opp'n 6.) The Court disagrees. Although the doctrine of fraudulent joinder and the bad faith exception are both to thwart gamesmanship by plaintiffs in diversity cases, the bad faith and fraudulent joinder standards are not the same. *NKD Diversified Enters., Inc.,* 2014 WL 1671659, at *2 (citing *Ehrenreich v. Black*, 994 F. Supp. 2d 284 (E.D.N.Y. Jan. 21, 2014)). The bad-faith exception of § 1446 governs the timing of removal. *Id.* Fraudulent joinder is a court created doctrine that pertains to the court's jurisdiction over the action. *Id.*

With this distinction in mind, we move to the fraudulent joinder analysis. An exception to the requirement of complete diversity exists where a defendant has been fraudulently joined to defeat diversity. *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001). If the plaintiff fails to state a cause of action against a

resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is deemed fraudulent. *Hamilton Materials, Inc. v. Dow Chemical Corp*., 494 F.3d 1203, 1206 (9th Cir. 2007) (quotations omitted). Where joinder is deemed fraudulent, the defendant's presence is ignored for the purposes of determining diversity. *Morris*, 236 F.3d at 1067. In addressing the issue of fraudulent joinder, the Ninth Circuit looks to whether the facts of the complaint would preclude the plaintiff from recovering against the non-diverse defendant. *See id*. at 1067-68 ("abundantly obvious that [plaintiff] could not possibly prevail on her negligent representation claim"). A defendant must prove through clear and convincing evidence that there is no possibility of establishing a cause of action against the fraudulently joined defendant. *Hamilton Materials, Inc.,* 494 F.3d at 1206.

In this case, Plaintiffs were misled into believing they had a cause of action against the Beall Defendants. (Mot. 10.) FPAMGI, both in writing and orally, represented to Plaintiffs that the Beall Defendants were the ones responsible for acquiring the malpractice insurance. (Mot. 3; Mot. Ex. 1, 2.) Plaintiffs agreed to forebear from executing judgment against FPAMGI in exchange for assignment of FPAMGI's rights against the Beall Defendants for negligently failing to research and obtain a proper malpractice insurance policy. (Mot. 10.) Later, when it came time to depose the president of FPAMGI, he retracted his admission and notified Plaintiffs that the Beall Defendants were never their insurance brokers. (*Id.* 11.) The ACORD form wherein it was stated that Beall had procured the Burlington policy for FPAMGI (Mot. Ex. 1) was falsely generated by Richard Beall only as a favor to Dr. Feldkamp as proof of malpractice coverage in order to maintain hospital privileges. (Denove Decl. ¶ 9.D; *see also* Mot. Ex. 5, 6.)

Based upon the oral and written representations made by FPAMGI, Plaintiffs had a proper cause of action under California law. *See Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc*., 115 Cal. App. 4th 1145, 1153 (2004) (insurance brokers owe a duty to procure the requested insurance); *Nowlon v. Koram*

*Ins. Center, Inc*., 1 Cal. App. 4th 1437, 1447 (1991) ("[T]he duty of the broker ... is incurred in the procurement or issuance of an insurance policy.").  It was only later, after discovery was conducted, that Plaintiffs were aware that there was no factual basis for their claims against the Beall Defendants, and subsequently dropped them from the case.  Therefore, the Court finds that the Beall Defendants were not fraudulently joined in the initial Complaint and removal was not proper while the Beall Defendants were part of the case.

**B.    Plaintiffs' Delay in Service Does Not Rise to Bad Faith**

Burlington also argues that Plaintiffs acted in bad faith by deliberately delaying service to Burlington.  The Court disagrees.  Burlington is correct in asserting that failure to serve defendants within a year can be construed as bad faith.  (Opp'n 8.)  However, this case can easily be distinguished from those that Burlington applies in its Opposition.  For example, the Court in *Kinabrew v. Emco-Wheaton, Inc.*, 936 F. Supp. 351, 353 (M.D. La. 1996), found that plaintiff acted in bad faith when the plaintiff did not attempt to serve the defendant until over a year after the complaint was filed.  Unlike *Kinabrew*, Plaintiffs made their very first attempt of service at the outset of filing their Amended Complaint.  (Reply 6.)

Additionally, Plaintiffs were diligent in their efforts to serve Burlington. Plaintiffs conducted research to find Burlington with the California Secretary of State; had constant court dates to monitor their progress; and even enlisted the help of the California Insurance Commission.  (Mot. 15.)  After over a year of failed attempts to serve Burlington, located in the Cayman Islands, Plaintiff finally succeeded.  (*Id.*)  In this case, Plaintiffs' failure to effect service does not rise to the high threshold for bad faith because there is sufficient evidence of diligence to serve Burlington.

Further, even if Plaintiffs were able to serve Burlington the same day as the Complaint was filed, Burlington would have no basis for removal until the Beall Defendants were dropped on September 2, 2014.  As explained above, since the Beall Defendants were not fraudulently joined, the bad-faith exception would not allow

Defendant to remove the case after the one-year limitation. *See Estate of Morris v. Mid-Century Ins. Co.*, No. 4:13CV2134, 2014 WL 2803477, at *4 (N.D. Ohio June 19, 2014) (finding removal untimely when defendants filed for removal two years after the filing of the initial pleading when the case became removable after a non-diverse defendant was dismissed from the case).  Accordingly, this Court finds that there is no bad-faith exception to the one-year rule and thus Burlington's Removal was untimely.

## V.   CONCLUSION

For the reasons discussed above, the Court finds that there is no subject-matter jurisdiction over this action under 28 U.S.C. § 1332.   Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand.  (ECF No. 8.)  This action shall be remanded to the Los Angeles County Superior Court, case number BC499219. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

November 24, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC499219

8